IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

FILED BY _____ D.C.

DEC 0 4 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## 14-CV-81515-BLOOM/ VALLE

THE CINCINNATI INSURANCE
COMPANY,

      Plaintiff

                                         CASE NO.: _____

v.

BODACIOUS FOOD COMPANY, a Georgia
Corporation, and LINDA DYE, as an Individual,
and as Representative of a Purported Class of
others similarly situated,

      Defendants.

_____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, The Cincinnati Insurance Company, by counsel, sues Defendants, Bodacious Food Company, Linda Dye, as an Individual, and in her capacity as the Representative of a purported class of others similarly situated, and alleges as follows:

## PRELIMINARY STATEMENT

The Cincinnati Insurance Company ("Cincinnati") seeks a judgment declaring that it does not owe defense or indemnity to Bodacious Food Company ("Bodacious Food" or the "Insured") under Cincinnati's policy, having policy number MFG 001 02 12 (the "Policy"), issued to Bodacious Food (Certified Policy attached as **Exhibit 1**) for damages set forth in the underlying civil action, *Linda Dye, et al. v. Bodacious Food Company,* Civil Action No. 9:14-cv-80627-

WPD, in the United States District Court for the Southern District of Florida, West Palm Beach Division (the "Underlying Lawsuit") (Complaint attached as **Exhibit 2**).

## JURISDICTION AND VENUE

1.      This is an action for declaratory judgment, and for such further relief as may be necessary or proper, pursuant to 28 U.S.C. §2201(a), to declare the rights, status and legal relations of Plaintiff and Defendants under a contract of liability insurance.

2.      Plaintiff, The Cincinnati Insurance Company, is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business located in Cincinnati, Ohio.  Plaintiff is engaged in the business of writing and issuing insurance policies for a paid premium.

3.      Defendant, Bodacious Food Company ("Bodacious Food" or the "Insured"), is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business located in Jasper, Georgia.  Defendant may be served with Summons and a copy of the Complaint through its Registered Agent, David Hays, at 339 Gennett Drive, Jasper, Georgia 30143.  Defendant, Bodacious Food, promoted and marketed the products at issue in the Underlying Lawsuit in this judicial district.

4.      Defendant, Linda Dye (hereinafter "DYE"), is an individual more than 18 years old, and is a citizen of Florida, who resides in Palm Beach County.

5.      Each Defendant has been joined in order to involve in this action all individuals or entities who have a financial or other interest in the outcome of the coverage issues to be decided in this declaratory judgment action.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 based on diversity of citizenship between the parties and the matter in controversy exceeding the sum or value of $75,000.00, exclusive of interest, attorney's fees and costs.

7.      This Court has personal jurisdiction over all Defendants.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2) because the events giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### The Underlying Lawsuit

9.      On or about May 10, 2014, Linda Dye and a proposed class, which is comprised of all Florida residents who have purchased for personal use one or more of the Products at issue in the Underlying Lawsuit during the period March 10, 2010 through and to the date Notice is provided to the proposed class (hereinafter, collectively, "Plaintiffs in the Underlying Lawsuit") filed a Complaint against Bodacious Food in the United States District Court for the Southern District of Florida, West Palm Beach Division, having Civil Action File No. 9:14-cv-80627-WPD.

10.     Plaintiffs in the Underlying Lawsuit allege that Bodacious Food unlawfully, fraudulently, unfairly, misleadingly and deceptively represented that at least three varieties of Geraldine's Cookies food products are "All Natural," despite containing unnatural, synthetic, artificial and/or genetically modified ingredients.

11.     Plaintiffs in the Underlying Lawsuit allege that Bodacious Food manufactures, distributes, markets, advertises, and sells products that are claimed to be "All Natural," when such products are not "All Natural" because they contain unnatural, synthetic, artificial and/or

3

genetically modified ingredients, including sugar, canola oil, dextrose, corn starch and citric acid.

12.    Plaintiffs in the Underlying Lawsuit allege that Bodacious Food's "All Natural" claim, which is displayed on the front of each individual packaging of the product, is untrue, misleading and likely to deceive consumers such as Linda Dye and members of the purported class.

13.    Plaintiffs in the Underlying Lawsuit allege that Bodacious Food unlawfully markets, advertises, sells and distributes the products to Florida purchasers in grocery stores, food chains, mass discounters, mass merchandisers, club stores, convenient stores, drug stores and/or dollar stores as being "All Natural."

14.    Plaintiffs in the Underlying Lawsuit allege that because of Bodacious Food's alleged false, misleading and deceptive representations and omissions, Plaintiffs in the Underlying Lawsuit were injured in the following particulars:

(1)    paid a sum of money for the products that were not as represented;

(2)    paid a premium price for the products that were not as represented;

(3)    were deprived the benefit of the bargain because the products they purchased were different than what Bodacious Food warranted;

(4)    were deprived of the benefit of the bargain because the products they purchased had less value than what was represented by the Bodacious Food;

(5)    did not receive products that measured up to their expectations;

(6)    ingested a substance that was other than what was represented by the Bodacious Food;

(7)    ingested a substance that they did not expect or consent to;

4

(8)     ingested a product that was artificial, synthetic, or otherwise unnatural;

(9)     ingested a substance that was of a lower quality than what Bodacious Food promised;

(10)    were denied the benefit of knowing what they ingested;

(11)    were denied the benefit of truthful food labels;

(12)    were denied the benefit of supporting an industry that sells natural foods; and

(13)    were denied the benefit of the beneficial properties of the natural foods promised.

15.     Plaintiffs in the Underlying Lawsuit allege that they were economically injured as a result of Bodacious Food's alleged wrongful conduct as described more fully in the Underlying Lawsuit.

16.     Plaintiffs in the Underlying Lawsuit seek an award of equitable relief, actual damages, an award of attorney's fees and costs, and pre- and post-judgment interest on any amounts awarded against the Insured pursuant to theories of: violation of Florida's Deceptive and Unfair Trade Practices; negligent misrepresentation; breach of express warranty; violation of the Magnuson-Moss Warranty Act; and unjust enrichment.

17.     In addition, Plaintiffs in the Underlying Lawsuit are seeking an Order requiring Bodacious Food to cease from representing the products are "All Natural."

18.     Bodacious Food has been and continues to be defended in the Underlying Lawsuit by Cincinnati, subject to a bilateral non-waiver agreement, whereby Cincinnati reserved the right to rely upon all terms and conditions of the insurance Policy, to deny coverage under the Policy, and to deny any obligation to defend or indemnify Bodacious Food against the claims and allegations made by Plaintiffs in the Underlying Lawsuit.  Attached hereto as **Exhibit 3** is a copy of the executed non-waiver agreement.

### THE POLICY MFG 001 02 012

19.     Cincinnati issued and delivered the Policy, which contains in pertinent part, a commercial general liability coverage part and an umbrella liability coverage part, for the period July 2, 2013 through July 2, 2016, to Bodacious Food, a Georgia corporation, with its principal place of business located at 339 Gennett Drive, Jasper, Georgia.

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

20.     The Commercial General Liability Coverage Part of the Policy contains, in SECTION I – COVERAGES - Coverage A. Bodily Injury and Property Damage Liability, an insuring agreement, which states in pertinent part:

    **1.**    **Insuring Agreement**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.

        **b.**    This insurance applies to 'bodily injury' and 'property damage' only if:

            (1)    The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes places in the 'coverage territory;' and

            (2)    The 'bodily injury' or 'property damage' occurs during the policy period.

21.     The Commercial General Liability Coverage Part of the Policy contains, in SECTION I – COVERAGES - Coverage B. Personal and Advertising Injury Liability, an insuring agreement, which states in pertinent part:

    **1.**    **Insuring Agreement**

6

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies....

  **b.** This insurance applies to 'personal and advertising injury' only if:

   (1) The 'personal and advertising injury' is caused by an offense arising out of your business; and

   (2) The 'personal and advertising injury' offense was committed in the 'coverage territory' during the policy period; and

   (3) Prior to the 'coverage term' in which the 'personal and advertising injury ' offense is committed, you did not know, per Paragraph 1.d. below, that the offense had been committed or had begun to be committed, in whole or in part.

22. The Commercial General Liability Coverage Part of the Policy defines "bodily injury" as follows:

  'Bodily Injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

23. The Commercial General Liability Coverage Part of the Policy defines "Occurrence" as follows:

  'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

24. The Commercial General Liability Coverage Part of the Policy defines "Personal and advertising injury" as follows:

  'Personal and advertising injury' means injury, including consequential 'bodily injury,' arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

7

     **e.**     Oral or written publication, in any manner, of material that violates a person's right of privacy;

     **f.**     The use of another's advertising idea in your 'advertisement'; or

     **g.**     Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'

25.     The Commercial General Liability Coverage Part of the Policy defines "Property damage" as follows:

'Property damage' means:

     **a.**     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     **b.**     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

For purposes of this insurance, "electronic data" is not tangible property.

26.     The Commercial General Liability Coverage Part contains an exclusion under Coverage A., entitled "Expected or intended injury' which states that the insurance does not apply to:

'Bodily injury' or 'property damage' which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended.  This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.

27     The Commercial General Liability Coverage Part contains an exclusion under Coverage B., entitled "Knowing Violation of Rights of Another" which states that the insurance does not apply to:

> 'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'.

28.     The Commercial General Liability Coverage Part contains an exclusion under Coverage B., entitled "Material Published with Knowledge of Falsity" which states that the insurance does not apply to:

> 'Personal and advertising injury' arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

29.     The Commercial General Liability Coverage Part contains an exclusion under Coverage B., entitled "Material Published Prior to Coverage Term" which states that the insurance does not apply to:

> 'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the later of the following: (1) The inception of this Coverage Part; or (2) The 'coverage term' in which insurance coverage is sought.

30.     The Commercial General Liability Coverage Part contains an exclusion under Coverage B., entitled "Quality or Performance of Goods – Failure to Conform to Statements" which states that the insurance does not apply to:

> 'Personal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'

## COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
## POLICY NO. MFG 001 02 12

31.     The Commercial Umbrella Liability Coverage Part of the Policy contains an Insuring Agreement, which provides in pertinent part:

> 1.  We will pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages for 'bodily injury', 'personal and advertising injury' or 'property

9

damage' arising out of an 'occurrence' to which this insurance applies:

    **a.**  Which is in excess of the 'underlying insurance'; or

    **b.**  Which is either excluded or not insured by 'underlying insurance'.

  **2.**  This insurance applies to 'bodily injury', 'personal and advertising injury' or 'property damage' only if:

    **a.**  The 'bodily injury', 'personal and advertising injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

    **b.**  The 'bodily injury' or 'property damage' occurs during the policy period shown in the Declarations; or

    **c.**  The 'personal and advertising injury' results from an 'occurrence' that take place during the policy period shown in the Declarations; and

32.     The Commercial Umbrella Liability Coverage Part of the Policy defines "bodily injury" as follows:

> 'Bodily Injury' means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of service or death resulting from any of these at any time.

33.     The Commercial Umbrella Liability Coverage Part of the Policy defines "Occurrence" as follows:

> 'Occurrence' means:
>
>   a.  an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage'; or
>
>   b.  An offense that results in 'personal and advertising injury'. All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one 'occurrence' regardless of: (1) The frequency of repetition;

(2) The number or kind of media used; or (3) The number of claimants.

34.    The Commercial Umbrella Liability Coverage Part of the Policy defines "Personal and advertising injury" as follows:

> 'Personal and advertising injury' means injury, including consequential 'bodily injury,' arising out of one or more of the following offenses:
>
> a.    False arrest, detention or imprisonment;
>
> b.    Malicious prosecution;
>
> c.    Abuse of process;
>
> d.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> e.    Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> f.    Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> g.    The use of another's advertising idea in your 'advertisement'; or
>
> h.    Infringing upon another's copyright, trade dress or slogan in your 'advertisement;' or
>
> i.    Discrimination, unless insurance coverage therefor is prohibited by law or statute.

35.    The Commercial General Liability Coverage Part of the Policy defines "Property damage" as follows:

> 'Property damage' means:
>
> a.    Physical injury to or destruction of tangible property, including all resulting loss of use.  All such loss of use shall

11

be deemed to occur at the time of the physical injury that caused it; or

**b.**     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

For purposes of this insurance, "electronic data" is not tangible property.

36.     The Commercial Umbrella Liability Coverage Part contains an exclusion entitled

"Expected or Intended Injury" which provides that the insurance does not apply to:

'Bodily injury' or 'property damage' which may reasonably be expected to result from the intentional acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or expected.  However, this exclusion does not apply to:

a.     'Bodily injury resulting from the use of reasonable force to protect persons or property; or

b.     'Bodily injury' or 'property damage' resulting from the use of reasonable force to prevent or eliminate danger in the operation of 'autos' or watercraft.

37.     The Commercial Umbrella Liability Coverage Part contains an exclusion entitled

"Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights"

which provides that the insurance does not apply to:

'Personal and advertising injury':

a.     Arising out of breach of contract, except an implied contract to use another's advertising idea in your 'advertisement';

b.     Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement';

c.     Arising out of the wrong description of the price of goods, products or services stated in your 'advertisement'; or

    d.        Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'.

38.     The Commercial Umbrella Liability Coverage Part contains an exclusion entitled "Falsity, Prior Publication, Criminal Act and Media and Internet Type Business" which provides that the insurance does not apply to:

'Personal and advertising injury':

    a.        Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    b.        Arising out of oral or written publication of material whose first publication took place before the later of the following:  (1) The inception of this Coverage Part; or (2) The 'coverage term' in which insurance coverage is sought;

    c.        Arising out of a criminal act committed by or at the direction of the insured; or

    d.        Committed by an insured whose business is: (1) Advertising, broadcasting, publishing or telecasting; (2) Designing or determining content of web-sites for others; or (3) An internet search, access, content or service provider.

However, Paragraph d. does not apply to Paragraphs 17 a., b., c., d. and i. of 'personal and advertising injury' under SECTION V- DEFINITIONS. For the purpose of Paragraph d., the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

## NOTICE OF INTENTION TO RAISE AN ISSUE OF FOREIGN LAW

39.     Cincinnati intends to claim the applicability of the law of Georgia with respect to insurance coverage issues and the rights and liabilities of the parties under the Policy, which was issued to Bodacious Food in Georgia.

## CLAIM FOR DECLARATORY RELIEF

40.     Cincinnati hereby incorporates by reference all prior allegations as if fully set forth herein.

41.     The injuries or damages alleged in the Underlying Lawsuit do not constitute or arise out of "bodily injury," "property damage" or "personal and advertising injury," as defined in the Policy, and there is no coverage for the damages and relief sought by Plaintiffs in the Underlying Lawsuit.

42.     To the extent that the claims asserted in the Underlying Lawsuit do not constitute "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Policy, there is no coverage for such "bodily injury" or "property damage".

43.     The allegations against Bodacious Food in the Underlying Action describe claims for damages excluded by the Policy because the Policy does not provide liability insurance coverage for "bodily injury" or "property damage" which may reasonably be expected to result from the intentional acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended.

44.     The allegations against Bodacious Food in the Underlying Action describe claims for damages excluded by the Policy because the Policy does not provide liability insurance coverage for "personal and advertising injury" caused by or at the direction of the insured with

14

the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

45.     The allegations against Bodacious Food in the Underlying Action describe claims for damages excluded by the Policy because the Policy does not provide liability insurance coverage for "personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

46.     To the extent that any alleged "personal and advertising injury" arises out of oral or written publication of material whose first publication took place before the coverage term of the Policy, there is no coverage for such "personal and advertising injury."

47.     The allegations against Bodacious Food in the Underlying Action describe claims for damages excluded by the Policy because the Policy does not provide liability insurance coverage for "personal and advertising injury" arising out of the failure of goods, products or services to conform to any statement of quality or performance made in the Insured's "advertisement."

48.     To the extent that any alleged "bodily injury", "property damage" or "personal and advertising injury" was known to the Insured prior to the coverage term of the Policy, there is no coverage under the Policy for such injuries or damages.

49.     Cincinnati does not have any obligation to defend or indemnify its Insured, Bodacious Food, for damages, losses, claims, costs or expenses arising out of or related to the claims giving rise to the Underlying Lawsuit because numerous terms, conditions, and exclusions of the Policy preclude coverage.

50.     Defendants have asserted that the Policy provides coverage for the claims asserted in the Underlying Lawsuit.

51.    Cincinnati therefore is in a position of doubt and uncertainty as to its obligation to Bodacious Food under the provisions of the Policy.

52.    An actual controversy therefore exists between all of the named parties as to whether Cincinnati is obligated to defend and/or indemnify Bodacious Food under the Policy for the claims made in the Underlying Lawsuit.

53.    A declaratory judgment is necessary to guide and protect Cincinnati from uncertainty and insecurity with respect to whether it is obligated to provide insurance coverage under the above-referenced insurance Policy to Bodacious Food for the claims made in the Underlying Lawsuit.

**PRAYER FOR RELIEF**

WHEREFORE, Cincinnati respectfully prays;

(a)    That this Court enter a declaratory judgment establishing that Cincinnati is not obligated to defend or indemnify Bodacious Food for any claims asserted in the Underlying Lawsuit;

(b)    That this Court enter a declaratory judgment establishing that Cincinnati has no liability to Bodacious Food for any claims asserted in the Underlying Lawsuit and that it is not responsible for the payment of any damages which may be awarded against Bodacious Food; and

(c)    For such other relief as this Court deems proper.

Respectfully submitted,


David A. Glenny
Florida Bar No. 371807
Melanie Chung Tims
Florida Bar No. 27603
BICE COLE LAW FIRM, PL
999 Ponce de Leon, Blvd.
Suite 710
Coral Gables, Florida 33134
(305) 444-1225- phone
(305) 446-1598 – fax
glenny@bicecolelaw.com
chungtims@bicecolelaw.com
THE CINCINNATI INSURANCE COMPANY

17